# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CHARLES BROOKS,

                              Plaintiff,

vs.                                                    9:13-CV-1483
                                                       (GLS/ATB)
ELIOT SPITZER, *et al.*,

                              Defendants.

CHARLES BROOKS, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Chief United States District Judge.

In this civil rights complaint, plaintiff alleges that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Articles 9 and 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claims that the defendants violated a federal court preliminary injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money damages. (Compl. at 19).[1]

---

[1] Plaintiff has numbered the pages and the paragraphs of his complaint. Thus, the court will cite to the pages and paragraphs as they have been assigned by the plaintiff.

Presently before the court is the defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Dkt. No. 21). Plaintiff has responded in opposition to defendants' motion, (including a response, supplemental response, and corrections to the supplemental response); defendants filed a reply; and plaintiff has filed a sur-reply. (Dkt. Nos. 32, 35, 37, 38, 41). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint for failure to state a claim.

## I.   <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d

150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

## II.  **Background of Relevant Caselaw**

In order to better understand the plaintiff's claims, it is necessary to discuss the background of the specific cases he relies upon for his due process challenge. Prior to

3

2007 and the codification of Article 10, civil confinement was governed by Article 9 of the Mental Health Law. N.Y. Mental Health Law § 9.27. Plaintiff, and other similarly situated individuals, represented by MHLS, challenged the use of Article 9 procedures. *Harkavy v. Consilvio*, 7 N.Y.3d 607 (2006) (*Harkavy I*). The court in *Harkavy I* held that because the inmates were still incarcerated pursuant to their criminal sentences when the commitment procedures were initiated, Corrections Law § 402, *not* Article 9 of the Mental Hygiene Law, applied to their cases. *Id.* at 613.

Section 402 required the Superintendent to apply to the court for the appointment of two examining psychiatrists, and if they certified that the inmate was mentally ill, and in need of psychiatric care and treatment, the Superintendent would be required to petition the court for a commitment order. *Id.* at 612 (citing N.Y. Correct. Law § 402; N.Y. Mental Hygiene Law § 9.27). Additional procedural safeguards would then be required, including notice and hearing requirements.[2] *Id.* (citing N.Y. Correct. Law § 402(9)). However, in finding that the incorrect statute was utilized, the court specifically stated that "[w]e do not propose that these petitioners be released, nor do we propose to trump the interests of public safety." *Id.* at 614. Instead, the court ordered an immediate retention hearing "pursuant to Article 9 of the Mental Hygiene Law," which controlled at that time because the inmates were no longer serving their prison sentences. *Id.*

On April 13, 2007, the New York Sex Offender Management and Treatment Act

---

[2] The court also pointed out that "once the sentence expires, . . . any further proceedings concerning the continued need for hospitalization are governed by the Mental Hygiene Law." 7 N.Y.3d at 614.

4

("SOMTA"), was enacted.  This statute is codified in Article 10 of the MHL and authorizes the "civil management" of certain sex offenders after completion of their prison terms, parole terms, or other periods of state custody. *Mental Hygiene Legal Service v. Cuomo ("MHLS II")*, 785 F. Supp. 2d 205, 209 (S.D.N.Y. 2011). This "civil management" is based upon the danger to society that is posed by recidivist sex offenders.[3] *Id.*  "Civil management" can include placement and treatment in a secure facility, akin to incarceration, as well as other "strict and intensive supervision" ("SIST"). *Id.* at 212.  SOMTA provides the procedures to be followed when an individual who has been convicted of a sex offense is nearing the end of his sentence of incarceration or other state custody in order to determine whether civil commitment is necessary. *Id.*

Following the enactment of Article 10, the New York Court of Appeals issued another decision, holding that individuals who were committed from correctional facilities under Article 9, be afforded a hearing which complied with Article 10. *See Harkavy v. Consilvio*, 8 N.Y.3d 645, 652 (2007) (*Harkavy II*).  In federal court, MHLS filed a "pre-enforcement" facial challenge to certain provisions of the SOMTA, only one of which is relevant to this case. *MHLS I*, 2007 WL 4115936, at *1.  MHL Section

---

[3] In *Mental Health Legal Services v. Spitzer* ("*MHLS-I*"), No. 07 Civ. 2935, 2007 WL 4115936 (S.D.N.Y. Nov. 16, 2007), the court elaborated upon the purposes for SOMTA, stating that the New York Legislature found that recidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management, and that some sex offenders have mental abnormalities that predispose them to engage in repeated sex offenses. 2007 WL 4115936 at *1 (citing MHL §§ 10.01(a), 10.01(b)).  Although treatment of these offenders begins during their incarceration on the criminal charges, the legislature found that the treatment should continue when that incarceration comes to an end, and that in "extreme cases," confinement will need to be extended by civil process in order to provide treatment while protecting the public from recidivist conduct. *Id.*

10.06(k) mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *Id.* at *1. In general, the MHL provides that when a convicted sex offender nears release from confinement or parole, a "multidisciplinary staff" provides a "preliminary review" to determine whether the individual should be referred for further evaluation. *MHLS II*, 785 F. Supp. 2d at 211 (citing MHL § 10.05(d)). If the staff determines that additional evaluation is necessary, a case review team ("CRT"), consisting of three individuals, at least two of whom are mental health professionals, must determine whether that person (the "respondent") requires additional civil management. *Id.* (citing MHL § 10.06(a)). The respondent is afforded notice of the referral. *Id.* (citing MHL § 10.05(e)).

The CRT determines whether the respondent suffers from a mental abnormality and is either a "dangerous sex offender requiring confinement," or "a sex offender requiring strict and intensive supervision." *Id.* at 212 (citing MHL §§ 10.03(1), 10.03(q), 10.03(e), 10.03(r)). If it appears that the individual will be released prior to the time the CRT makes its determination, the Attorney General ("AG") is authorized to file a "securing petition," preventing the individual's release from custody while the review is ongoing. *Id.* (citing MHL § 10.06(f)).

If the CRT determines that the individual requires additional "civil management," the AG files a "sex offender civil management petition" in New York State Court. The court must conduct a hearing to determine whether there is probable cause to believe that the individual requires civil management. *Id.* (citing §§ 10.06(a),

(g), and (k)).  The hearing must commence within 72 hours of the anticipated release date unless the individual consents or the AG shows good cause for the delay.  MHL §§ 10.06(g), (h).  Upon the court's finding of probable cause, SOMTA provides that the individual must be committed to a secure treatment facility pending resolution of a full commitment trial.  MHL § 10.06(k).  The statute provides that the trial must begin within 60 days of the probable cause hearing.  MHL § 10.07(a).

In *MHLS 1*, the court granted a preliminary injunction, prohibiting the enforcement of MHL § 10.06(k), without an individualized finding that the individual was "dangerous," and that no condition or combination of conditions of supervision could allow the respondent to be at liberty pending the final adjudication. *See* 2007 WL 4115936, at *15.  The court in *MHLS II* found that section 10.06(k) was facially unconstitutional and granted a permanent injunction, with the same conditions.[4]  The court must note that neither[5] court invalidated the section altogether as plaintiff seems to argue.  Rather than prohibiting use of the section altogether, the court specifically enjoined enforcement of section 10.06(k) "***absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the***

---

[4] The court notes that only the preliminary injunction had been issued at the time of plaintiff's probable cause finding in 2008.  The permanent injunction was not issued until 2011.

[5] The judge who issued the preliminary injunction in *MHLS-I* was Judge Gerard E. Lynch.  Judge Lynch was subsequently appointed to the Second Circuit Court of Appeals, and the case was assigned to Judge Deborah A. Batts, who issued the permanent injunction in *MHLS-II* in 2011.

*public during the pendency of the proceedings.*"[6] *Id.*

Although the Second Circuit affirmed the preliminary injunction, it later reversed the court's order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients, who were respondents in the MHL proceedings.[7] *MHLS v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012).  On remand, the District Court found that MHLS did not have standing to pursue the respondents' claims and dismissed the action. *MHLS v. Cuomo* ("*MHLS III*"), No. 07 Civ. 2935 (DAB), 2014 WL 1345891 (S.D.N.Y. Mar. 31, 2014).

## III.  Facts and Contentions

### A.  Plaintiff

The complaint contains two central arguments in support of plaintiff's claim that he was improperly held beyond his maximum release date.  First, plaintiff alleges that after *Harkavy I*, the State lost jurisdiction over him, and he should never have been re-evaluated either under Article 9 or Article 10.  In the alternative, plaintiff claims that

---

[6] In making this determination, the court likened the analysis under the MHL to the section of the Bail Reform Act which provides for pretrial detention of a criminal defendant upon a finding of probable cause to believe that the defendant has committed the crime, and that the individual poses a danger to the community that no conditions or combination of conditions of release will prevent. *See* 785 F. Supp. 2d at 225 (citing *United States v. Salerno*, 481 U.S. 739, 750 (1987)).  Probable cause alone will not suffice. *Id.*

[7] The standing issue arose from the Second Circuit's decision in *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149 (2d Cir. 2012).  The issue was whether MHLS could establish any of the "indicia of membership" required for a membership organization to assert associational standing. *Id.*  The dismissal based upon standing does not change the court's analysis of the merits of the claims, but the permanent injunction is no longer in effect.

the defendants improperly utilized MHL § 10.06(k), in violation of due process and in violation of the injunctions issued in *MHLS I*, and *MHLS II*.

Defendants have submitted the court documents that were filed in plaintiff's MHL Article 10 proceeding, and they argue that the complaint should be dismissed on various bases, some unrelated to the merits of the due process claim, including the statute of limitations and absolute immunity. Defendants also argue that plaintiff has failed to state a claim on the merits of this action, that he received due process, and that he is properly confined under the MHL. The following facts are taken from the defendants' exhibits and prior case law, of which this court takes judicial notice. (*See* Dkt. No. 21-1, Exs. A-K).

On January 27, 2000, plaintiff pled guilty to two counts of second degree burglary and second degree sexual abuse. On February 8, 2000, he was sentenced to serve a sentence of eight years confinement. As petitioner neared the end of his sentence, the State of New York initiated proceedings under section 9.27 of the New York Mental Health Law, which resulted in an order placing plaintiff in the custody of the Manhattan Psychiatric Center ("MPC"), an Office of Mental Health ("OMH") facility. (Compl. ¶ 17); *State v. C.B.*, 18 Misc. 3d 1136, 859 N.Y.S.2d 899 (N.Y. Sup. Ct. 2008); *Brooks v. Sawyer*, No. 9:11-CV-248 (N.D.N.Y. Dec. 16, 2003) (Dkt. No. 55 at 2-3) (denial of motion for reconsideration).

Based upon the decision in *Harkavy I*, plaintiff was afforded a retention hearing under Article 9 because he was no longer incarcerated at the time. Plaintiff's Article 9 hearing was held in March of 2007, and the state court concluded that OMH

demonstrated that plaintiff was still in need of care and treatment and ordered his retention. *Brooks v. Sawyer*, *supra* (Dkt. No. 55 at 3). After SOMTA took effect, and pursuant to *Harkavy II*, the state commenced Article 10 proceedings.

Defendants' Exhibit A is the AG's "Petition for Civil Management" filed in New York County.[8] (Boivin Decl. Ex. A). The petition states that plaintiff is a "convicted sex offender" and lists the dates of, and the sentence imposed for, plaintiff's convictions. (*Id.* ¶ (A)(2)). The petition was filed in New York County because plaintiff was committed at MPC, and MHL § 10.06(a) provides for venue in the county where the plaintiff is located. (*Id.*) The petition requested a court order (1) finding that there was probable cause to believe that plaintiff is a sex offender requiring civil management under Article 10 of the MHL; (2) appointing MHLS to represent plaintiff; (3) directing that plaintiff be produced at a particular time and place for a probable cause hearing (authorizing plaintiff's retention under section 10.06(h) until the hearing); and (4) directing that plaintiff submit to a psychiatric examination pursuant to section 10.06(d) if the court found probable cause to believe that plaintiff was a sex offender requiring civil management. (Ex. A at § (V)), (A)-(E)).

On June 22, 2007, defendant Samuel Langer, M.D. conducted an examination of the plaintiff for the purpose of assessing his risk for dangerousness and sexual recidivism in order to determine whether plaintiff was a "sex offender requiring civil management." (Def.s' Ex. A at ¶ 19). Dr. Langer diagnosed plaintiff as suffering from

---

[8] The AG at the time of the signing of the petition was Andrew M. Cuomo, and the AAG was Roger A. Canaff. (Boivin Decl. Ex. A at 1).

Axis I: Paraphilia-NOS- non consent; Exhibitionism; Bipolar-II Disorder; Cannabis dependence; and Axis-II: Anti-social Personality Disorder. (Def.s' Ex. A at ¶ 20). Based on this diagnosis, Dr. Langer concluded "with a reasonable degree of professional certainty," that these conditions constituted a "mental abnormality" as defined in MHL § 10.03(i), that plaintiff would be predisposed to the commission of sex offenses, that plaintiff would have "serious difficulty in controlling such conduct," and that plaintiff would be "likely to reoffend sexually." (Def.s' Ex. A at ¶ 21). Attached to the petition is a memorandum from defendant Richard P. Miraglia, LCSW, the Associate Commissioner, Division of Forensic Sciences, stating that the CRT found that plaintiff is was a sex offender requiring civil management as defined by SOMTA. (Def.s' Ex. A, CM/ECF p. 14).

On October 17, 2007, the day after the AG's petition, New York Supreme Court Justice Eileen Bransten issued an Order to Show Cause, returnable before her on October 30, 2007. (Def.s' Ex. B). An attorney from MHLS was appointed to represent plaintiff, and plaintiff was ordered to show cause why he should not be declared a sex offender suffering from a mental abnormality requiring civil management. (*Id.*) Both plaintiff and counsel were served with the order, and plaintiff was ordered held beyond his release date, pending the probable cause hearing, pursuant to MHL § 10.06(h). (*Id.*)

On November 1, 2007, Justice Bransten granted MHLS's motion pursuant to MHL § 10.06(b) to remove plaintiff's case to Bronx County. (Def.s' Ex. C). Following the transfer of plaintiff's case to Bronx County, on March 4, 2008, New York Supreme Court Justice Joseph J. Dawson held a hearing to determine whether plaintiff was a sex

offender requiring civil management, whether he was "sufficiently dangerous to require confinement," and whether lesser conditions of supervision would suffice to protect the public during the pendency of the proceedings. (Def.s' Ex. D, Dawson Decision and Order).[9] Justice Dawson issued a detailed opinion outlining the hearing testimony and other evidence of record. At the hearing, Dr. Langer testified that he had known plaintiff since 2005, when he was initially committed under Article 9. Dr. Langer outlined the circumstances of plaintiff's crimes, which included breaking into four different homes and attempting to rape or sexually abuse the female occupants. Dr. Langer then listed plaintiff's diagnoses[10] and discussed plaintiff's behavior while in custody, which included refusing to take medication prescribed for his bipolar disorder, failure to complete a program for sex offenders, and inappropriate sexual behavior in front of a nurse. Dr. Langer stated that plaintiff had significant difficulty in following the standards of behavior at MPC. (Def.s' Ex. D at 5).

The court considered three other psychiatric reports and found that "while differing to some degree in their assessments of [plaintiff's] condition, [they were] consistent in documenting [plaintiff's] long history of mental illness, sexual abuse of others, and substance abuse." (*Id*.) The court also considered statistical tests in determining the probability that plaintiff would reoffend if released. The court found

---

[9] Because there are multiple state court decisions, the court will cite to the defendants' exhibit, rather than to "Decision & Order."

[10] In addition to antisocial personality disorder, bipolar disorder and cannabis dependence, plaintiff suffered from exhibitionism and paraphilia-nos, which was described as a "catch all designation . . . characterized by a variety of exhibited aberrant sexual behaviors, including rape, sexual abuse, or other wrongful behaviors." (Def.s' Ex. D at 4).

that plaintiff "lacked, and continues to lack, the ability to control himself." (*Id.* at 10). The court ultimately detained plaintiff pending trial pursuant to MHL § 10.06(k), finding that "there [was] probable cause to believe that [plaintiff] is a sex offender requiring civil management and that he is sufficiently dangerous to require confinement because there are no lesser conditions of supervision that will suffice to protect the public during the pendency of the proceedings." (*Id.* at 11). Justice Dawson committed plaintiff to a secure treatment facility and scheduled a trial for May 9, 2008, "or for such other date as the parties may agree to or the Court requires . . . ." (*Id.*)

Plaintiff was afforded a jury trial, beginning May 13, 2009, before New York Supreme Court Justice Dineen A. Riviezzo, and the jury returned a verdict finding that plaintiff does suffer from a mental abnormality as defined in the MHL. After the jury trial, Justice Riviezzo held a "dispositional hearing," pursuant to MHL § 10.07(f), during which she heard additional testimony and issued a written decision dated July 17, 2009. (Def.s' Ex. E, Riviezzo Decision & Order). Both plaintiff and the State presented witnesses, plaintiff's counsel had the opportunity for cross-examination, and the court carefully discussed the evidence in making its findings.[11] Plaintiff and his girlfriend testified. Justice Riviezzo found that the AG proved "by clear and convincing evidence that [plaintiff] is a dangerous sex offender requiring confinement for treatment, and thus is not eligible for strict and intensive supervision and treatment (SIST) in the community." (*Id.* at 1). On July 23, 2009, Judge Riviezzo issued an order

---

[11] This court will not discuss the evidence in detail, but has read the state court's decision and finds that it contains a detailed analysis of the additional testimony, including reasons for Justice Riviezzo's credibility findings.

committing plaintiff to a secure treatment facility "until such time as he no longer requires confinement." (Def.s' Ex. F at 2).

The Appellate Division, First Department affirmed both the jury's verdict and the judge's commitment order on October 25, 2011. (Def.s' Exs. H).[12]  The Appellate Division issued a written order, discussing plaintiff's claims on the merits.[13]  (Def.s' Ex. H).  The New York Court of Appeals dismissed plaintiff's appeal on its own motion based upon the lack of a substantial constitutional question. (Def.s' Ex. J).[14]  On May 10, 2010, OMH notified plaintiff and MHLS of plaintiff's right to petition for a discharge through an Annual Review Proceeding pursuant to MHL § 10.09(b). (Def.s' Ex. K at 1).  Petitioner requested a hearing, which was held on April 20, 2012 before Acting Supreme Court Justice Joseph E. Fahey in Oneida County Supreme Court. (Def.s' Ex. K; Order for Continued Confinement).  Plaintiff was represented by MHLS counsel at the hearing, and Justice Fahey appointed Dr. Roy Aranda to conduct an independent psychological evaluation. (*Id.* at 1).  Plaintiff was also examined on June 24, 2010 by Dr. Timothy Wisniewski, a Licensed Psychologist for OMH. (*Id.*)  An updated evaluation was conducted by Dr. Paul Etu, a Licensed Psychologist for OMH. (*Id.* at 2). On May 28, 2012, Justice Fahey issued a written order, continuing plaintiff's

---

[12] Defendants' Ex. G is plaintiff Notice of Appeal, filed by plaintiff's counsel.

[13] On appeal, plaintiff challenged the trial court's denial of a pre-trial hearing on the voluntariness of a confession that was admitted at trial. (Def.s' Ex. H at 1-2).  Plaintiff also raised a claim of ineffective assistance of counsel, in addition to other evidentiary claims that the court did not specifically address in its order, but found were "without merit." (*Id.* at 2).

[14] Defendants' Ex. I is plaintiff's notice of appeal, filed by plaintiff's counsel.

confinement. (*Id.*)  Plaintiff is currently confined at CNYPC.

## B.    Defendants

Defendants make various arguments in support of their motion to dismiss.  They argue that the complaint is barred by the statute of limitations (Def.s' Mem. at 14-15); the complaint fails to state a claim (*Id.* at 15-17); claims against the defendants in their official capacities are barred by the Eleventh Amendment (*Id.* at 17-18); claims against defendants Cuomo and Jackson are barred by absolute immunity (*Id.* at 18-19); claims against former Governor Spitzer are barred by legislative immunity (*Id.* at 19-21); the court lacks jurisdiction to entertain the complaint based upon the *Rooker Feldman* Doctrine (*Id.* at 21-22); and defendants Hogan, Miraglia, Robinowitz, and Langer are protected by qualified immunity (*Id.* at 22-24).

The court need not address the defendants' statute of limitations argument because even if plaintiff had filed this action within the three-year statute of limitations for any of the reasons that he sets forth,[15] the case would still have to be dismissed on multiple grounds as discussed below.

## IV.    <u>Res Judicata</u>

### A.    Legal Standards

Res judicata includes two concepts: claim preclusion and issue preclusion, also known as collateral estoppel. *Rivera v. City of New York*, __ F. App'x __, 2014 WL 5463320, at *2 (2d Cir. Oct. 29, 2014).  Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their

---

[15] The court is ***not*** making any such finding.

15

privies from relitigating issues that were or could have been raised in that action. The doctrine bars subsequent litigation if the earlier decision was (1) a final judgment on the merits, (2) the previous action involved the plaintiff or those in privity with him, and (3) the claims asserted in the subsequent action were, or could have been raised in the prior action. *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)). *See also Ajamian v. Nimeh*, No. 1:14-CV-320, 2014 WL 6078425, at *2 (N.D.N.Y. Nov. 13, 2014) (citing *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal citations and quotation omitted)). Under claim preclusion, even if the plaintiff's claims are based upon different legal theories, they are barred in the subsequent action, provided they arise from the same transaction or occurrence. *Id.* (citing *LTec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) (per curiam)).

The doctrine of collateral estoppel provides that once a court has actually and necessarily decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue on a different cause of action involving a party to the first case. *Rivera v. United States*, No. 3:10-CV-1970, 2012 WL 3043110, at *2 n.5 (D. Conn. 2012) (discussing collateral estoppel) (citations omitted). Collateral estoppel is applicable if (1) the issues in both proceedings are identical; (2) the issue of law or fact was "actually litigated and actually decided" in the prior proceeding; (3) the party against whom preclusion is sought had a full and fair opportunity for litigation in the prior proceeding; and (4) the previously litigated issues were necessary to support a valid and final judgment on the merits. *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir.

2008) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986));  *Wade v. City of Kingston*, No. 1:13-CV-623, 2014 WL 4897244, at *4 (N.D.N.Y. Sept. 30, 2014) (citing *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted)). *See also NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 184-85 (2d Cir. 2011) (discussing factors considered for collateral estoppel).  Whether a previous federal court judgment has preclusive effect in a subsequent action is a question of federal common law. *NML Capital, Ltd.*, 652 F.3d at 184 (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)).

### B.    Application

On March 7, 2011, plaintiff filed an application for writ of habeas corpus in this court. *Brooks v. Sawyer*, No. 9:11-CV-248 (NAM) (Dkt. No. 9) (amended petition).  In *Brooks v. Sawyer*, plaintiff's central claims were that New York State did not have jurisdiction to transfer him into OMH custody after the expiration of his sentence in October of 2005.[16]  Plaintiff based his claim on the decision in *Harkavy I* and *Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013), arguing that because the courts found Article 9 to be "unconstitutional," there was no jurisdiction to reevaluate him under either Article 9, or later under Article 10.  In his habeas petition, he also argued that his MHLS attorney was ineffective in failing to move to dismiss on this basis.  He also argued that Judge Ciparick erred in the *Harkavy* cases when she allowed reevaluation, rather than ordering plaintiffs' release.

On May 29, 2012, Senior District Court Judge Norman A. Mordue ordered the

---

[16] The petition contained additional arguments that are not relevant to this action.

denial of plaintiff's application for habeas relief. (Dkt. No. 46 in 11-CV-248).

Although Judge Mordue based his decision on plaintiff's failure to exhaust these

claims, leading to dismissal based upon procedural default, the court specifically stated

that all of plaintiff's claims were also "substantively without merit." (*Id.* at 18-19

n.13).

Plaintiff moved for reconsideration in *Brooks v. Sawyer*, basing his argument on

a jury verdict in plaintiffs' favor after the Second Circuit's remand in *Bailey v. Pataki*.

(Dkt. No. 48 in 11-CV-248). The jury in *Bailey* determined that former OMH

Commissioner Sharon Carpinello was liable and awarded nominal damages to each

plaintiff in the amount of $1.00.  In his motion for reconsideration, plaintiff argued that

because the federal jury found Commissioner Carpinello liable, the State's commitment

order holding him became "null and void," and he was entitled to immediate release.

(*Id.* at 6).

Judge Mordue found that plaintiff was confined under Article 10, and the

plaintiffs in *Bailey* challenged the procedures under Article 9.  Judge Mordue held that

the federal jury's verdict in *Bailey* did not invalidate the plaintiff's current confinement

and denied plaintiff's motion for reconsideration. (*Id.* at 8-9).  The Second Circuit

dismissed plaintiff's appeal of Judge Mordue's order because the notice of appeal was

not timely filed. (Dkt. No. 58 in 11-CV-248) (Mandate of the Second Circuit Court of

Appeals).

Generally, decisions based upon procedural defaults are adequate and

"independent" state grounds for dismissal in habeas proceedings and would not be

considered a "decision on the merits."[17]   Therefore, the court's holding on the merits "in dicta" may not be technically entitled to res judicata or collateral estoppel effect. However, this court agrees with Judge Mordue's finding on the merits of plaintiff's claims.   In any event, there is an alternative basis for finding that the decision in plaintiff's habeas corpus petition precludes his civil rights case herein.

## V.   *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a section 1983 action, seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a ***criminal conviction*** unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. 512 U.S. at 486-87.

The analysis in *Heck v. Humphrey* has been expanded to confinement other than that caused by a criminal conviction.   *Heck* has been applied to procedural challenges where the nature of the challenge would necessarily imply the invalidity of the underlying disciplinary confinement as well as involuntary retention at CNYPC. *See Edwards v. Balisok*, 520 U.S. 641, 646-49 (1997) (prison disciplinary hearings); *Downs v. Meyers*, No. 9:10-CV-203 (TJM/DRH), 2012 WL 1014829, at *5 (N.D.N.Y. Feb. 17, 2012), (Rep't-Rec.), *adopted*, March 23, 2012 (CNYPC confinement).

---

[17] *See Kindred v. Colvin*, No. 9:13-CV-1011 (LEK/ATB), 2014 WL 5662858, at *7 (N.D.N.Y. Nov. 4, 2014), *adopting* Rep't Rec. dated Sept. 25, 2014 (procedural bar applies if the last state court to issue a decision in petitioner's case rests on a state law ground that is "independent of the federal question and adequate to support the judgment") (citation omitted).

## B.    Application

In this case, even if the decision in plaintiff's habeas corpus application would be insufficient to invoke res judicata or collateral estoppel, plaintiff's civil rights action is barred by *Heck*. If the court were to decide in plaintiff's favor, that the state lost jurisdiction over him after *Harkavy I*, in addition to reversing a the state court's judgments in *Harkavy I* and *Harkavy II*, this court would necessarily invalidate the plaintiff's continued confinement. Plaintiff has not shown that the confinement in question has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court.[18]  In fact, the federal habeas court has specifically denied plaintiff's petition to invalidate his civil confinement. Thus, plaintiff's civil rights case may be dismissed based upon *Heck v. Humphrey*.

## VI.   <u>Absolute Immunity/Personal Involvement</u>

### A.    Legal Standards

#### 1.    Prosecutors

It is well-settled that prosecutors enjoy absolute immunity from suit under

---

[18] Plaintiff's confinement at CNYPC under Article 10 is the result of a jury trial and dispositional hearing by the state court. Thus, his confinement is pursuant to a "state court judgment," and habeas relief was available to him, making *Heck* applicable to his case. This is distinguishable from cases challenging CNYPC confinement where the confinement was terminated prior to filing the complaint as in *Wheeler v. Pataki*, No. 9:07-CV-892, 2009 WL 674152, at *6 (N.D.N.Y. March 11, 2009) or when a decision in plaintiff's favor would not affect the length of his confinement as in *June v. Blair*, No. 9:09-CV-323, 2010 WL 8522831, at *6-7 (N.D.N.Y. Sept. 30, 2010) (finding that although *Heck* is likely to apply in civil confinement cases, it did not apply in *June* because a decision in plaintiff's favor would not necessarily affect the length of plaintiff's confinement) (Rep't Rec.), *adopted in part, and rejected in part on other grounds*, 2012 WL 1048463 (N.D.N.Y. Mar. 28, 2012).

section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

Prosecutorial immunity is extended to government attorneys who initiate civil suits or administrative proceedings. *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010). An agency official who decides to institute an administrative proceeding is entitled to prosecutorial immunity because this decision is "'very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.'" *Id.* at 127 (citing *Butz v. Economou*, 438 U.S. 478, 515 (1978)). *See also Contreras v. Perimenis*, No. 13-3337, 2014 WL 1409495, at *1 (2d Cir. April 14, 2014) (AAG afforded absolute immunity when sued in his capacity as a government advocate,

prosecuting child welfare cases).

### 2. Witnesses

A trial witness who is sued under section 1983 also enjoys absolute immunity from any claim based on his or her testimony. *Rehberg v. Paulk*, __ U.S. __, 132 S. Ct. 1497, 1505 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983)).  In *Rehberg v. Paulk*, the Court restated the proposition that, without absolute immunity for witnesses, the truth-seeking process at trial would be impaired. *Id.*  This immunity applies to both trial and grand jury witnesses and to law enforcement as well as lay witnesses. *Id.* at 1505-1506. *See also Vasquez v. City of New York*, No. 14 Civ. 491, 2014 WL 5810111, at *9 (S.D.N.Y. Nov. 6, 2014) (citing *Rehberg, supra*) (witnesses are afforded absolute immunity).

### 3. Legislators

Legislators acting in the sphere of "legitimate legislative activity" are also protected by absolute immunity from suit. *Mues v. Town of Denning, N.Y.*, No. 1:12-CV-241 (MAD/ATB), 2014 WL 2453341, at *7 (N.D.N.Y. June 2, 2014) (citing inter alia *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007)).  Absolute legislative immunity applies to local legislators as well as their counterparts on the state and regional levels. *Id.* (citing *Almonte, supra*; *Bogan v. Scott Harris*, 523 U.S. 44, 54 (1998); *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 210 (2d Cir. 2003)).  The purpose of absolute immunity is to protect legislators from deterrents to the "uninhibited discharge of their legislative duty . . . ." *Id.* (citations omitted).

### 4. Personal Involvement

Notwithstanding the availability of absolute immunity, in order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

### B. Application

In this case, plaintiff is seeking only damages against various defendants, including former Attorney General Andrew Cuomo and Assistant Attorney General ("AAG") Jeffrey Jackson. Any suit for damages against these defendants is barred by absolute immunity because the AAG was initiating a proceeding against plaintiff on behalf of the government. In addition, neither of the two named defendants were personally involved in the alleged violation of which plaintiff complains. Although Andrew Cuomo was the Attorney General at the time the October 16, 2007 petition was filed, there is no suggestion that he had any personal involvement in plaintiff's petition or any of the ensuing proceedings.

It is questionable that AAG Jeffrey Jackson was personally involved in an alleged violation. He was not the AG who filed any petition against plaintiff. The Article 10 petition was filed by AAG Roger A. Caniff. (Def.s' Ex. A at 1, 7). Defendant AAG Jeffrey Jackson represented New York State in 2008 and during the 2009 trial of the Article 10 proceeding. *See Matter of New York v. C.B.*, 23 Misc. 3d 1130(A), 889 N.Y.S.2d 884 (Sup. Ct. Bronx Cty. 2009); *Matter of New York v. C.B.*, 18 Misc. 3d 1136(A), 859 N.Y.S.2d 899 (Sup. Ct. Bronx Cty. 2008). To the extent that plaintiff claims there was no jurisdiction to hold the Article 10 trial, then AAG Jackson could be "personally involved" in the alleged "violation." However, regardless of any personal involvement, these two defendants are protected by absolute immunity, and any claim for damages must be dismissed as against both of the AG defendants. Even if plaintiff had named or could move to amend his complaint to name individuals who were involved in his commitment proceedings, they would be entitled to absolute immunity from damages.[19]

Plaintiff has also named Dr. Samuel J. Langer, who was the Chief of Psychiatry at the Manhattan Psychiatric Center. Dr. Langer conducted the plaintiff's mental evaluation and testified at his probable cause hearing, after which the court determined that plaintiff's was too dangerous for release. (Compl. ¶ 23). Dr. Langer is entitled to absolute immunity for his testimony and any claim based upon his testimony. Thus, the

---

[19] Generally, one cannot amend a complaint in a response to a motion to dismiss. *See Chamberlin v. City of White Plains*, No. 12-CV-5142, 2013 WL 6477334, at *25 n.19 (S.D.N.Y. Dec. 10, 2013) (citing *Wright v. Ernst & Young. LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). However, in pro se cases in which the court liberally construes plaintiff's pleadings, the court could dismiss the action with the opportunity to amend, which the court will discuss below.

complaint may be dismissed as to Dr. Langer.

Plaintiff has also named Elliot Spitzer, former Governor of New York as a defendant. (Compl. ¶ 18). Plaintiff claims that "this defendant was responsible for signing the Sex Offender Management and Treatment Act, (SOMTA), . . . and he . . . is responsible for enforcement of MHL Article 10, which had been unjustly utilized to continue this petitioner/plaintiff's illegal involuntary civil commitment . . . ." (*Id.*) Clearly, plaintiff is attempting to hold defendant Spitzer responsible for the purely legislative act of signing a statute into law. As such, this falls squarely into the conduct protected by legislative immunity, and the complaint may be dismissed as against defendant Spitzer. *See e.g. New York Motor Truck Ass'n v. Pataki*, No. 03-CV-2386, 2004 WL 2937803, at *11 (S.D.N.Y. 2004) (legislative immunity bars action against governors on the basis of their role in enacting legislation; a governor's general duty to faithfully execute the law does not, alone, make him a proper party in a suit challenging a state statute, particularly when other agencies have primary responsibility to enforce the statute).

Defendant Michael Hogan was the Commissioner of OMH. Plaintiff alleges that this defendant "was responsible for the training, supervision, and conduct of all OMH employees . . . [and was] responsible for authorizing, condoning, and ratifying . . . the acts of his employees." (Compl. ¶ 20). Plaintiff then states that defendant Hogan was an "aider and abettor" of the other defendants. (*Id.*) There is no indication that this defendant was personally involved in the conduct of which plaintiff complains. To the extent that plaintiff states in the most conclusory way that defendant Hogan "conspired"

with the other defendants by "aiding and abetting" them, such a conclusory allegation of conspiracy must be dismissed. *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). There is also no indication how he would have "aided and abetted" anyone with respect to the conduct alleged in this complaint. Thus, the complaint may be dismissed as against defendant Hogan for lack of personal involvement.

The same may be said for defendants Robinowitz and Miraglia. Defendant Robinowitz was the Executive Director of the MPC. Plaintiff claims that this defendant was responsible for the training, supervision, and conduct of "all employees" at MPC, and "as such, defendant Robinowitz was an aider and abettor" of the rest of the defendants. (Compl. ¶ 22). Plaintiff cites no other facts upon which to base this claim. Defendant Miraglia was the Associate Commissioner of the OMH, and according to plaintiff was responsible for assisting defendant Sptizer in implementing Article 10. (Compl. ¶ 21). Plaintiff also alleges that defendant Miraglia "conceded" responsibility for creating and implementing MHL 9.27.[20] Plaintiff believes that this alleged conduct makes these two individuals aiders and abettors. (*Id.*) Plaintiff's conclusory allegations cannot withstand the motion to dismiss. In any event, as discussed below, plaintiff did not suffer any denial of his constitutional rights as the result of his Article 10 proceeding.

---

[20] Although plaintiff's claim that defendant Miraglia's involvement in creating and implementing these two statutes would be insufficient to establish personal involvement, this court notes that defendant Miraglia wrote a memorandum in plaintiff's case, stating that the CMT found that plaintiff was a sex offender requiring civil management. (Def.s' Ex. A at CM/ECF p.14). Even if defendant Miraglia were personally involved, the case would still have to be dismissed as against him based upon all the alternative reasons discussed in this Report.

## VI.    Eleventh Amendment

### A.    Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).

### B.    Application

To the extent that plaintiff is attempting to sue any of the defendants in their official capacities for damages, the Eleventh Amendment would also bar the action, and any claims against the defendants in their official capacities may be dismissed.

## V.    Due Process

### A.    Legal Standards

To begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process.  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).  The parties do not question that plaintiff has a liberty interest in remaining free from involuntary commitment to a mental hospital. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980).  The issue is whether he was afforded the

27

appropriate procedural safeguards in conjunction with his civil commitment.

###   B.    Application

The due process requirements regarding Article 10 commitment and treatment have been extensively discussed in the *MHLS* line of cases. The procedural protections afforded by the statute have been stated in this report above. In addition to his "jurisdictional" claim which this court will discuss below, plaintiff challenges the application of section 10.06(k), which allowed detention of the individual after a probable cause hearing, but before a full trial, without an "individualized" finding that the individual was dangerous. However, a review of the decision by Justice Dawson shows that he was well aware of the terms of the *MHLS* injunction. He cited the federal court decision,[21] analyzed it in his order, found plaintiff to be a danger to the community, and specifically worded his decision in order to avoid violating either the injunction or plaintiff's constitutional rights.

As stated above, the *MHLS* cases did ***not*** enjoin the application of section 10.06(k), the injunctions (now no longer in effect), merely prohibited section 10.06(k) from being enforced to detain an individual after his probable cause hearing and prior to the commitment trial ***without an individualized finding that he was dangerous and that confinement was the only way to protect the public***. Justice Dawson made that specific finding, and thus, he did not violate the preliminary injunction that was issued in *MHLS I*. Plaintiff was properly detained pending his commitment trial.

Plaintiff also argues that the state lost "jurisdiction" over plaintiff after *Harkavy I*

---

[21] (Def.s' Ex. D at 1-11).

28

was decided, long before his Article 10 proceeding. He claims that Judge Ciparick should not have ordered the plaintiffs in *Harkavy I* to undergo a new hearing. Instead, she should have ordered their release, and any further proceedings, including those subsequently held under Article 10, were without jurisdiction. There is absolutely no merit to plaintiff's argument, and as stated above, the same argument has been rejected by both the state and federal court. *See Brooks v. Sawyer*, 9:11-CV-248 (NAM) (N.D.N.Y. May 29, 2012) (Dkt. No. 46 at 18-19 n.13) (finding that "Brook's claim that the State lacked jurisdiction to place him in the custody of OMH is without substance[]" and discussing several other claims related to his Mental Hygiene Law challenges); *Brooks v. State*, 120 A.D.3d 1577, 933 N.Y.S.2d 409, 410 (4th Dep't 2014) (citing *State v. C.B.*, 88 A.D.3d 599, 599-600, 931 N.Y.S.2d 300 (1st Dep't 2011)[22]).

Plaintiff is essentially claiming that Judge Ciparick's decision to allow a re-evaluation under the proper statute was error. Under what is known as the *Rooker Feldman*[23] doctrine, federal district courts do not have authority to review the judgments of state courts. *Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (holding that a party losing in state court may not seek what is essentially appellate review of the state court judgment in a United States District Court based on the party's claim that the state judgment itself violates the constitution)). In order for *Rooker Feldman* to apply, the

---

[22] The appeal in *State v. C.B.* was dismissed. 18 N.Y.3d 905, 940 N.Y.S.2d 213 (2012)

[23] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

plaintiff must have "lost" in state court, he must complain of injuries caused by the state court judgment, he must invite the federal court to review and reject the state court judgment, and the state court judgment must have been rendered prior to the federal court proceedings. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 78 (2d Cir. 2005).

Although in state court, the plaintiffs in *Harkavy I* won their challenge to the use of Article 9, they did not obtain release. It is not clear that the plaintiffs in the *Harkavy* cases (then represented by counsel) even asked the court for release. If they did, they clearly lost on that issue. Plaintiff was unhappy with the relief that was afforded him, and he invites this court to review the state court findings. Plaintiff cannot challenge Judge Ciparick's determination in this proceeding. Subsequent state courts have also denied plaintiff's claim that the court lost jurisdiction over him after *Harkavy I*. *See State v. C.B.*, *supra*; *Brooks v. State*, 120 A.D.3d 1577, 933 N.Y.S.2d 409, 410 (4th Dep't 2014). Plaintiff did lose those challenges and cannot ask this court to review them now.

The court would also point out that plaintiff is mistaken as to the effect of Judge Ciparick's determination that the incorrect statute was utilized to detain plaintiffs in *Harkavy* past their release dates. Plaintiff seems to believe that the fact that his due process rights were violated prevented Judge Ciparick from ordering a reevaluation under the correct statute. Contrary to plaintiff's belief, there are very few situations where the invalidity of a procedure or even the constitutional invalidity of a conviction itself will justify immediate release without the opportunity for the state to remedy the

constitutional violation. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  In *Hilton*, the Supreme Court recognized that a federal district court has "broad discretion in conditioning a judgment granting habeas relief," and "may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." *Id.*  The extreme remedy of unconditional release is disfavored. *Lewis v. Commissioner of Correction*, 975 F. Supp. 2d 169, 207 (D. Conn. 2013). *See also DiSimone v. Phillips*, 518 F.3d 124 (2d Cir. 2008) (court affirmed the decision to vacate the state conviction, but reversed the district court's order prohibiting re-trial); *Young v. Conway*, 698 F.3d 69, 89 (2d Cir. 2012) (reversing as premature the district court's order precluding the prosecution from retrying petitioner on the charge).

In this case, the state remedied the violation by first, conducting a re-evaluation pursuant to Article 9 as ordered by Judge Ciparick, and then affording plaintiff another evaluation pursuant to the newly enacted Article 10.  Contrary to plaintiff's strenuous assertion, he received all the process that he was due in the Article 10 proceedings during and after the probable cause hearing.  As stated above, Justice Dawson was very careful to abide by the *MHLS* injunction that was in effect at the time.  The court did not invalidate section 10.06(k), it merely required the court to make certain findings prior to detaining an individual pending trial.  Those findings were made in this case.  Thus, whatever violation was committed initially, the state subsequently corrected the matter, and plaintiff was properly confined.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the defendants' motion to dismiss (Dkt. No. 21) be **GRANTED**, and the complaint dismissed in its entirety **WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **fourteen (14) days** within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Dated: December 2, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge