**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES BROOKS,**

              **Plaintiff,**               9:13-cv-1483
                                                             (GLS/ATB)

     v.

**ELIOT SPITZER et al.,**

              **Defendants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Charles Brooks
Pro Se
C262223
CNY PC
P.O. Box 300
Marcy, NY 13403

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN     BRUCE J. BOIVIN
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Charles Brooks commenced this action against

defendants Eliot Spitzer, Andrew M. Cuomo, Michael Hogan, Steve Robinowitz, Richard P. Miraglia, Samuel J. Langer, and Jeffrey Jackson, pursuant to 42 U.S.C. § 1983, alleging that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center (CNYPC) as a sex offender requiring civil management. (*See generally* Compl., Dkt. No. 1.)

On April 18, 2014, defendants filed a pre-answer motion to dismiss. (Dkt. No. 21.) Brooks filed a response, (Dkt. No. 32), supplemental responses, (Dkt. No. 35, 38), and, after defendants filed their reply, a surreply, (Dkt. No. 41). In a Report-Recommendation (R&R) issued on December 3, 2014, Magistrate Judge Andrew T. Baxter recommended that defendants' motion to dismiss be granted and Brooks' complaint be dismissed. (Dkt. No. 45.) Pending are Brooks' objections to the R&R. (Dkt. No. 49.) For the reasons that follow, the R&R is adopted in part and rejected in part.

## II. **Background**[1]

---

[1] The court incorporates Judge Baxter's thorough recitation of the salient facts giving rise to Brooks' complaint, along with his discussion of the relevant state and federal case law upon which Brooks bases his due process claims. (Dkt. No. 45 at 3-15.) Nevertheless, the court also provides a brief overview of the facts and case law here for context. The facts mentioned are drawn from Brooks' complaint and presented in the light most favorable to him.

2

In 2000, pursuant to a plea agreement, Brooks was convicted of one count of sexual abuse in the first degree, one count of sexual abuse in the second degree, and two counts of burglary in the second degree. (Compl. ¶ 17.) He was sentenced to eight years in prison, and was transferred to the custody of the Department of Correctional Services, now known as the Department of Corrections and Community Supervision (DOCCS). (*Id.*) Before he reached his maximum release date—October 11, 2005—proceedings were initiated under § 9.27 of the New York Mental Hygiene Law (MHL), which resulted in an order placing Brooks in the custody of the Manhattan Psychiatric Center (MPC).[2] (*Id.*)

Over the next several years, a series of state and federal decisions, along with legislative action, continuously changed the procedures for instituting and maintaining involuntary civil confinement for recidivist sex offenders. Each time the legal tide changed, Brooks was swept up in it. First, in *State of N.Y. ex rel. Harkavy v. Consilvio*, 7 N.Y.3d 607, 614 (2006) (*Harkavy I*), the New York Court of Appeals concluded that, for individuals who were still incarcerated, such as Brooks, Corrections Law § 402, not Article 9, governed the procedures for initiating civil confinement. The

---

[2] Brooks was later transferred to CNYPC. (Compl. ¶ 17.)

court specifically noted, however, that it was "not propos[ing] that these petitioners be released," but, instead, ordered "that those petitioners remaining in [Office of Mental Health (OMH)] custody be afforded an immediate retention hearing pursuant to article 9 of the Mental Hygiene Law—now controlling—since they are no longer serving a prison sentence." *Harkavy I*, 7 N.Y.3d at 614. Consistent with this order, Brooks was afforded a retention hearing under Article 9, and the state court concluded that Brooks should continue to be retained. *See Brooks v. Sawyer*, No. 9:11-CV-248 (N.D.N.Y. Dec. 16, 2003), Dkt. No. 55 at 3.

Next, in April 2007, New York's Sex Offender Management and Treatment Act (SOMTA), codified in Article 10 of the New York Mental Hygiene Law, took effect. Thereafter, the New York Court of Appeals issued another decision, *State of N.Y. ex rel. Harkavy v. Consilvio*, 8 N.Y.3d 645 (2007) (*Harkavy II*), which held that individuals such as Brooks, who had been committed from correctional facilities to psychiatric hospitals under Article 9, were to be afforded a hearing in compliance with the new Article 10. *See Harkavy II*, 8 N.Y.3d at 652-53. Accordingly, the state then commenced Article 10 proceedings for Brooks. (*See generally* Compl. at 14-16.)

4

After SOMTA took effect, the Mental Hygiene Legal Service (MHLS) filed a facial challenge to certain provisions in federal court, only one of which is relevant here—§ 10.06(k), which mandates involuntary civil detention, pending a commitment trial, based upon a finding at a probable cause hearing that the individual may have a mental abnormality, without a finding of current dangerousness. *See Mental Hygiene Legal Serv. v. Spitzer*, No. 07 Civ. 2935, 2007 WL 4115936, at *15 (S.D.N.Y. Nov. 16, 2007) (*MHLS I*), *aff'd sub nom. Mental Hygiene Legal Serv. v. Paterson*, No. 07-5548-cv, 2009 WL 579445 (2d Cir. Mar. 4, 2009). In *MHLS I*, the court granted a preliminary injunction, prohibiting the enforcement of § 10.06(k), not *in toto*, but "absent a specific, individualized finding of probable cause to believe that a person is sufficiently dangerous to require confinement, and that lesser conditions of supervision will not suffice to protect the public during pendency of the proceedings." *Id.* A permanent injunction to the same effect was issued in *Mental Hygiene Legal Serv. v. Cuomo*, 785 F. Supp. 2d 205 (S.D.N.Y. 2011) (*MHLS II*).[3]

---

[3] Although the Second Circuit affirmed the preliminary injunction, it later reversed the court order granting a permanent injunction and remanded the case to the district court to determine whether MHLS had standing to pursue the action on behalf of its clients. *See Mental Hygiene Legal Servs. v. Schneiderman*, 472 F. App'x 45 (2d Cir. 2012). On remand, the district court concluded that MHLS did not have standing and dismissed the action. *See Mental Hygiene Legal Serv. v. Cuomo*, No. 07 Civ. 2935, 2014 WL 1345891, at *11 (S.D.N.Y.

In his R&R, Judge Baxter thoroughly outlined Brooks' Article 10 process. (Dkt. No. 45 at 10-15.) Although there is no need to rehash that history here, the court highlights that, after a probable cause hearing, New York Supreme Court Justice Joseph Dawson issued an eleven-page decision concluding that Brooks "lacked, and continues to lack, the ability to control himself," and committed Brooks to a secure treatment facility pending a final trial, based on his finding that "there [was] probable cause to believe that [Brooks] is a sex offender requiring civil management and that he is sufficiently dangerous to require confinement because there are no lesser conditions of supervision that will suffice to protect the public during the pendency of the proceedings." (Dkt. No. 21, Attach. 1 at 36-46.)

After a jury trial, dispositional hearing, and an appeals process, Brooks remains confined at CNYPC. (*Id.* at 48-57, 59-60, 62-63, 65-67, 69-71, 73; *see* Compl.) The thrust of his complaint in this lawsuit is that he was improperly held beyond his maximum release date because: (1) after *Harkavy I*, the state lost jurisdiction over him, which mandated his immediate release; and (2) defendants improperly utilized § 10.06(k) in violation of both due process and the injunctions issued in *MHLS I* and

---

Mar. 31, 2014).

*MHLS II*. (*See generally* Compl.)

### III. Standard of Review

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

### IV. Discussion

In his R&R, Judge Baxter first recommended dismissal of Brooks' due process claims based on the doctrine espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994), reasoning that, "[i]f the court were to decide . . . that the state lost jurisdiction over him after *Harkavy I*, in addition to reversing . . . the state court's judgments in *Harkavy I* and *Harkavy II*, this court would

necessarily invalidate [Brooks]'s continued confinement." (Dkt. No. 45 at 19-20.) Next, and alternatively, Judge Baxter recommended dismissal of (1) Cuomo, the former Attorney General, based on absolute prosecutorial immunity; (2) Jackson, a former Assistant Attorney General, also based on absolute prosecutorial immunity; (3) Langer, the Chief of Psychiatry at MPC who conducted Brooks' mental evaluation and testified at his probable cause hearing, based on his absolute immunity as a witness; (4) Spitzer, the former Governor of New York, based on absolute legislative immunity; (5) Robinowitz, the Executive Director of MPC, for lack of personal involvement; (6) Miraglia, the former Associate Commissioner of OMH, for lack of personal involvement; and (7) Hogan, the former Commissioner of OMH, for lack of personal involvement. (*Id.* at 20-27.) Finally, Judge Baxter also recommended dismissal of Brooks' due process claims on their merits. (*Id.* at 27-31.)

Here, Brooks raises several—often incomprehensible—objections to the R&R. First, as far as the court can discern, Brooks objects to the R&R to the extent that it recommended dismissal of his complaint without considering his First Amendment access to the courts claim. (Dkt. No. 49 at 1-3.) The court construes this as a specific objection, which triggers de

8

novo review. *See Almonte*, 2006 WL 149049, at *3, *5. In his objections, even though he acknowledges that, "nowhere within his complaint" did he specifically "utiliz[e] the words 'access to the courts,'" Brooks argues that the facts alleged on pages seven, nine, and ten of his complaint can plausibly be read to give rise to an access to the courts claim. (Dkt. No. 49 at 1-3, 10.) After reviewing Brooks' complaint, the court, regrettably, agrees that there are glimmers, albeit faint, of an access to the courts claim, such that dismissal of Brooks' entire complaint is premature at this juncture. Accordingly, the R&R is rejected to the extent that it recommended dismissal of Brooks' complaint in its entirety. Defendants may file an appropriate responsive pleading to this cause of action within fourteen (14) days of this Memorandum-Decision and Order.

Brooks next spends several pages—far beyond the page limit—making a variety of general objections, which the court reviews only for clear error. First, Brooks objects to the R&R because Judge Baxter failed to consider that the trial judge at his probable cause hearing relied upon an "unauthorized psychiatric evaluation." (*Id.* 49 at 3-10.) Simply because Judge Baxter did not use the words "unauthorized psychiatric evaluation," however, does not mean that he did not consider this issue.

9

To the contrary, Judge Baxter discussed at length the evaluations that Brooks underwent, and concluded that Brooks "received all the process that he was due." (Dkt. No. 45 at 10-13, 29-31.)

Second, Brooks objects to the R&R's analysis of the New York Court of Appeals' decisions in *Harkavy I* and *Harkavy II*, and, seemingly, although not at all clearly, argues that those two decisions compelled his immediate release from civil confinement because the state "forfeited 'jurisdiction'" over him. (Dkt. No. 49 at 10-14, 26-30.) However, Brooks already made these arguments in his response to defendants' motion to dismiss. (Dkt. No. 32 at 17-19.) In turn, Judge Baxter thoroughly reviewed the relevant state and federal case law, considered Brooks' contentions, and rejected them. (Dkt. No. 45 at 3-10, 28-31.)

Third, Brooks essentially objects to one sentence of the R&R, which simply states that "[d]efendants . . . argue that [Brooks] . . . received due process, and that he is properly confined under the MHL," (Dkt. No. 45 at 9), and then proceeds to re-argue the merits of his claims. (Dkt. No. 49 at 15-25.) Aside from objecting to defendants' argument, Brooks otherwise does not take umbrage with any specific portion of the R&R. Fourth, Brooks objects to the R&R to the extent that it recommended dismissal of

10

his complaint on the ground that the dismissal of his previous habeas corpus petition had res judicata effect. (Dkt. No. 49 at 31.) In his R&R, however, Judge Baxter noted that Brooks' habeas petition was dismissed on procedural grounds—failure to exhaust—and, therefore, would probably not be considered a decision on the merits for res judicata or collateral estoppel purposes. (Dkt. No. 45 at 15-19.) Judge Baxter specifically stated that, in any event, res judicata was of no moment because "there is an alternative basis" to dismiss the complaint, (*id.* at 19), and, thus, did not recommend dismissal of Brooks' complaint on res judicata grounds, rendering Brooks' objection meaningless.

Finally, Brooks objects to the portion of the R&R that recommended dismissal of Miraglia, Hogan, Langer, Robinowitz, Cuomo, and Jackson based on their lack of personal involvement. (Dkt. No. 49 at 32-37.) As an initial matter, Brooks is, in part, incorrect, as Judge Baxter's recommendation to dismiss Langer, Cuomo, and Jackson was not based on lack of personal involvement; instead, Judge Baxter's recommendation to dismiss these defendants was based on their absolute immunity. (Dkt. No. 45 at 23-25 (noting, with respect to Jackson and Cuomo, that "regardless of any personal involvement, these two defendants are

11

protected by absolute immunity, and any claim for damages must be dismissed as against both . . . defendants").) Further, assuming, without deciding, that the additional facts set forth in Brooks' objections are enough to establish Miraglia, Hogan, and Robinowitz's personal involvement, dismissal of Brooks' due process claims is still proper because, as Judge Baxter properly found, these claims fail on the merits.

Thus, the court has reviewed Brooks' general objections, along with the remainder of the R&R, for clear error, and found none. Accordingly, the R&R is adopted to the extent that it recommended dismissal of Brooks' due process claims, but, as noted above, rejected to the extent that it recommended dismissal of Brooks' complaint in its entirety, without considering Brooks' First Amendment access to the courts claim. Regarding this remaining First Amendment claim, the court has only determined that it has substance, not necessarily merit.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Andrew T. Baxter's December 3, 2014 Report-Recommendation (Dkt. No. 45) is **ADOPTED** to the extent that it recommended granting defendants' motion to dismiss and dismissal

of Brooks' due process claims, but **REJECTED** to the extent that it recommended dismissal of Brooks' complaint in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Brooks' only remaining claim is a First Amendment access to the courts claim; and it is further

**ORDERED** that defendants have fourteen (14) days from the date of this Memorandum-Decision and Order to interpose an answer or otherwise file a responsive pleading with respect to Brooks' remaining claim; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 24, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court