# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CHARLES BROOKS,

                                          Plaintiff,

    vs.                                                  9:13-CV-1483 (GLS/ATB)

ELIOT SPITZER, *et al.*,

                                          Defendants.

---

CHARLES BROOKS, Plaintiff pro se
BRUCE J. BOIVIN, AAG, Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Senior United States District Judge.

**I.**     **Procedural Background**

In this civil rights complaint, plaintiff alleged that he was denied due process in conjunction with his involuntary commitment to the Central New York Psychiatric Center ("CNYPC") as a sex offender requiring civil management, pursuant to Articles 9 and 10 of the N.Y. Mental Hygiene Law ("MHL"). (Compl.) (Dkt. No. 1). Plaintiff also claimed that the defendants violated a federal court preliminary injunction in confining him past his mandatory release date. Plaintiff seeks a substantial amount of money

damages. (Compl. at 19).[1]

On April 18, 2014, defendants made their first motion to dismiss the plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 21). Plaintiff responded in opposition to defendants' motion, including a response, supplemental response, and corrections to the supplemental response; defendants filed a reply; and plaintiff filed a sur-reply. (Dkt. Nos. 32, 35, 37, 38, 41). After considering the defendants' motion and all of the plaintiff's opposition papers, this court issued a Report-Recommendation, recommending dismissal of the complaint in its entirety. (Dkt. No. 45).

In recommending dismissal, I reviewed the background and relevant case law associated with plaintiff's due process challenge.[2] (Dkt. No. 45 at 3-8). After finding that the complaint "contains two central arguments in support of plaintiff's claim that he was improperly held beyond his maximum release date, I reviewed the state court procedures followed in plaintiff's specific case. (Dkt. No. 45 at 8-15).

I also found that plaintiff's due process claims had been rejected by Senior Judge Mordue in a federal habeas corpus petition, filed by plaintiff prior to this civil rights action. (Dkt. No. 45 at 17) (citing *Brooks v. Sawyer*, No. 9:11-CV-248 (NAM) (Dkt. No. 9) (amended petition)). I found that even though Judge Mordue based his decision on failure to exhaust these claims, leading to a dismissal based on procedural default, he specifically stated that all of plaintiff's claims were "substantively without merit."

---

[1] Plaintiff has numbered the pages and the paragraphs of his complaint. Thus, the court will cite to the pages and paragraphs as they have been assigned by the plaintiff.

[2] The court assumes familiarity with my prior Report-Recommendation.

(Dkt. No. 45 at 18) (citing Dkt. No. 46 in 11-CV-248 at 18-19).

Plaintiff moved for reconsideration in *Brooks v. Sawyer*, basing his argument on a jury verdict in plaintiffs' favor after the Second Circuit's remand in *Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013). (Dkt. No. 48 in 11-CV-248). The jury in *Bailey* determined that former OMH Commissioner Sharon Carpinello was liable for a due process violation and awarded nominal damages to each plaintiff in the amount of $1.00. In his motion for reconsideration, plaintiff argued that because the federal jury found Commissioner Carpinello liable, the State's commitment order holding him became "null and void," and he was entitled to immediate release. (*Id.* at 6).

Judge Mordue found that plaintiff was currently confined under Article 10, and the plaintiffs in *Bailey* challenged the procedures under Article 9. Judge Mordue held that the federal jury's verdict in *Bailey* did not invalidate the plaintiff's current confinement and denied plaintiff's motion for reconsideration. (*Id.* at 8-9). The Second Circuit dismissed plaintiff's appeal of Judge Mordue's order because the notice of appeal was not timely filed. (Dkt. No. 58 in 11-CV-248) (Mandate of the Second Circuit Court of Appeals). Even though Judge Mordue's holding on the merits "in dicta" could not be afforded "res judicata" effect, I agreed with his rationale in recommending dismissal of the plaintiff's due process claims. I also recommended dismissal based upon *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. No. 45 at 19-20).

Then I addressed the absolute immunity that is afforded to prosecutors, witnesses, and legislators. (Dkt. No. 45 at 21-26). Defendants in this case include former Attorney General Andrew Cuomo and Assistant Attorney General Jeffrey

3

Jackson. Any suit for damages against these defendants would be barred by absolute immunity because any action that either of these defendants allegedly took against plaintiff was in initiating a court proceeding against the plaintiff. In addition, I found that defendant Cuomo had no personal involvement in the sex offender petition against plaintiff or in any of the subsequent proceedings.

Plaintiff had also sued Dr. Samuel J. Langer, the Chief of Psychiatry at the Manhattan Psychiatric Center. Dr. Langer conducted the plaintiff's mental evaluation and testified at his probable cause hearing, after which the court determined that plaintiff was too dangerous to release.[3] (Compl. ¶ 23). That was the only claim plaintiff made against Dr. Langer. I found that Dr. Langer was entitled to absolute immunity for his testimony and any claim based on his testimony. (Dkt. No. 45 at 24-25).

I also recommended dismissal of former Governor Eliot Spitzer because his alleged conduct in "signing the Sex Offender Management and Treatment Act," fell "squarely into the conduct protected by legislative immunity . . . ." (Dkt. No. 45 at 25). I recommended dismissal of defendants Michael Hogan and Miraglia, the Commissioner and the Associate Commissioner of the Office of Mental Health ("OMH") for lack of personal involvement in any of plaintiff's due process claims. I also recommended dismissing defendant Robinowitz for lack of personal involvement. Defendant Robinowitz was the Executive Director of the Manhattan Psychiatric Center. Finally, I found on the merits, that plaintiff did not suffer any injury as a result of the

---

[3] Dr. Langer conducted his examination of plaintiff in 2007. (Dkt. No. 45 at 10) (citing (Def.s' Ex. A at ¶ 19).

4

Article 10 proceeding because he was afforded the required procedural safeguards, and the state court did not violate the injunction that was in place at the time of the plaintiff's Article 10 hearing. (Dkt. No. 45 at 27-31).

Plaintiff objected to my Report-Recommendation, and on March 24, 2015, Judge Sharpe adopted the dismissal of ***all*** of plaintiff's due process claims. (Dkt. No. 50). However, in his objections to my recommendation, plaintiff claimed that he had an "access to courts" claim hidden on pages "seven, nine, and ten" of his complaint. Judge Sharpe found that after reviewing the complaint, the court, "regrettably agrees that there are glimmers, albeit faint, of an access to courts claim, such that dismissal of Brooks' entire complaint is premature at this juncture." (Dkt. No. 50 at 9). Based on this finding, Judge Sharpe declined to dismiss the entire complaint, and allowed defendants to respond to this alleged cause of action. (*Id.*)

Plaintiff moved for reconsideration of Judge Sharpe's order which adopted the recommendation, dismissing plaintiff's due process claims and moved for appointment of counsel. (Dkt. No. 57, 58). Defendants have filed a motion to dismiss plaintiff's final claim. (Dkt. No. 53). Plaintiff has responded in opposition to the motion, and defendants have filed a response to his motion for reconsideration and a reply to the motion to dismiss. (Dkt. Nos. 58, 59).[4] On July 16, 2015, Judge Sharpe denied

---

[4] There was some confusion regarding the docketing of plaintiff's documents. Plaintiff filed one document that purports to be both a motion for reconsideration of Chief Judge Sharpe's March 15, 2015 Order and a response to defendants' second motion to dismiss. (Dkt. No. 58). The Clerk noted on the docket that plaintiff's motion started with "page 2 of 22." (Dkt. No. 58). However, a review of the page that is labeled "2" shows that it is actually the title page of the motion. Thus, the label "2" appeared only to be a typographical error. On August 13, 2015, plaintiff filed another title page for his motion for reconsideration, this time, labeled "1 of 22." (Dkt. No. 63). Interestingly, the two title pages

5

plaintiff's motions for reconsideration and for appointment of counsel.[5] (Dkt. No. 60).
On July 30, 2015, plaintiff filed an "interlocutory appeal" of Judge Sharpe's order.
(Dkt. No. 61). Plaintiff's appeal was dismissed on January 13, 2016. (Dkt. No. 65).

For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint in its entirety.

## II.   Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality.

---

do not match, and the second title page contains a disrespectful discussion of the court's decisions.

[5] On January 4, 2016, plaintiff filed a motion for reconsideration of Judge Sharpe's July 16, 2015 summary order. (Dkt. No. 64). On February 3, 2016, Judge Sharpe denied the plaintiff's motion for reconsideration. (Dkt. No. 66).

6

*Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

### III. Facts

I will focus on the facts upon which plaintiff states that he bases his access to

courts claim. In his complaint, plaintiff states his disagreement with Judge Ciparick's decision in *Harkavy v. Consilvio*, 7 N.Y.3d 607 (2006) (*Harkavy I*). (Complaint (Compl. at 7). In *Harkavy I*, Plaintiff, and other similarly situated individuals, ***represented by Mental Health Legal Services ("MHLS")***, challenged the use of Article 9 procedures. *Harkavy v. Consilvio*, 7 N.Y.3d 607 (2006) (*Harkavy I*). Judge Ciparick held that because the inmates were still incarcerated pursuant to their criminal sentences when the commitment procedures were initiated, Corrections Law § 402, *not* Article 9 of the Mental Hygiene Law, applied to their cases. *Id.* at 613.

However, in finding that the incorrect statute was utilized, the court specifically stated that "[w]e do not propose that these petitioners be released, nor do we propose to trump the interests of public safety." *Id.* at 614. Instead, the court ordered an immediate retention hearing "pursuant to Article 9 of the Mental Hygiene Law," which controlled at that time because the inmates were no longer serving their prison sentences. *Id.*

Plaintiff states that, upon learning of the court's decision in *Harkavy I*, plaintiff states that he attempted to ask MHLS in the First Department[6] to challenge the decision on the issue of "jurisdiction" and constitutionality. (Compl. at 7). When MHLS refused to do so, plaintiff complained[7] to the Appellate Division, and the Appellate Division, First Department, and the Appellate Division *granted* appointment of counsel from the "18-b" panel by Order dated April 27, 2010. (*Id.*) Then although plaintiff states that he was appointed new counsel, he states that he was "still dissatisfied with having received

---

[6] Plaintiff was not in CNYPC in 2006.

[7] Plaintiff states that his complaint to the First Department is dated in 2010. (Compl. at 7).

8

no assistance from MHLS in "securing his immediate release." (*Id.*) Plaintiff claims he "retained" Attorney Ameer Benno, who commenced *Bailey v. Pataki* in the Southern District of New York on behalf of plaintiff and five other inmates. (*Id.* at 7-8).

Plaintiffs in *Bailey v. Pataki* were successful, and as stated in my Report-Recommendation, obtained $1.00 in nominal damages. Plaintiff states that when the State attempted to appeal *Bailey*, plaintiff was transferred to CNYPC, where he was again represented by MHLS from the Fourth Department. (Compl. at 8). Plaintiff again asked his attorneys from MHLS to challenge the *Harkavy I* decision, but he claims that these attorneys used "deceit" and "fraudulent misrepresentation" in an effort to persuade plaintiff to "abandon his repeated requests to be assisted with appropriate motions which would led [sic] to his release from illegal involuntary civil commitment . . . ." (Compl. at 9).

Plaintiff states that he filed complaints dated April 20, 2010, May 10, 2010, and May 18, 2010, which "let to oral argument" before the Honorable Joseph E. Fahey. (*Id.*) Plaintiff claims that Judge Fahey recognized the misconduct of Attorney Elizabeth Fortino by assigning her supervisor, Michael Hungerford, who allegedly relieved himself. After Mr. Hungerford, Judge Fahey appointed Attorney Stephen C. Clark to represent plaintiff. (*Id.*) Plaintiff claims that Attorney Clark "immediately commenced openly displaying the same unconstitutional conduct which had been displayed by attorney Fortino." (*Id.*) Plaintiff filed a complaint with the Appellate Division, Fourth Department, and plaintiff states that the court relieved MHLS and assigned an attorney from the 18-b panel to prosecute plaintiff's appeal from the "violations" to which he

9

was subjected during the MHL § 10.09 annual review. (*Id.*) However, MHLS was only relieved for purposes of the appeal, and plaintiff claims that he again unsuccessfully attempted to get MHLS to secure his "immediate release." (*Id.*)

Plaintiff states that when he returned from the jury trial in *Bailey v. Pataki* on July 31, 2013, plaintiff asked MHLS to move for "reconsideration" pursuant to Fed. R. Civ. P. 60(b).[8] (Compl. at 10). Plaintiff claims that he wrote a letter to which MHLS responded, but apparently not to plaintiff's satisfaction. Plaintiff then states that MHLS

> have consistently disregarded the responsibilities and duties entrusted to them in accordance with Mental Hygiene Law § 47.03(e); especially with the fact that MHLS have been well aware that there are "NO" law books or a Law library here at CNYPC. That petitioner/plaintiff consistently and continuously have [sic] been at a huge disadvantage without the assistance from law books/law library.

(*Id.*)

## IV. <u>Personal Involvement</u>

### A. **Legal Standards**

In order to recover damages in a civil rights action, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations. *Farrell v. Burke*, 449 F.3d 470, 474 (2d Cir. 2006). There are various ways to establish personal involvement of a supervisory official articulated in *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (a supervisory official is said to have been personally involved if that official directly participated in the infraction; if after learning of a

---

[8] It is unclear what plaintiff was asking MHLS to move to reconsider. It appears since plaintiff cited to a federal rule, he was asking MHLS to make a motion in *Bailey*.

10

violation through a report or appeal, he or she failed to remedy the wrong; if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event).

B.   **Application**

Plaintiff has named the following defendants: Eliot Spitzer, former Governor; Andrew Cuomo, former Attorney General; Jeffrey Jackson, Assistant Attorney General; Michael Hogan, former Commissioner of OMH; Richard Miraglia, Associate Commissioner of OMH; Steve Robinowitz, former Executive Director for the Manhattan Psychiatric Center; and Samuel J. Langer, former Chief of Psychiatry for Manhattan Psychiatric Center.  None of these defendants were in any way involved with plaintiff's alleged denial of access to courts.  Assuming that plaintiff is challenging the lack of a law library at CNYPC, none of these defendants have any current or former connection to CNYPC, and plaintiff does not, and cannot, allege that any one of these defendants was involved with plaintiff's alleged constitutional violation.  There are no defendants, named in this action that could be held personally responsible to the extent that the plaintiff's complaint could be liberally read as alleging an access to courts claim.  The complaint may be dismissed in is entirety on that basis alone, but the court will continue its analysis because there are various alternative bases for granting the motion to dismiss.

## V. Access to Courts

### A. Legal Standards

It is well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." 430 U.S. at 828 (emphasis added).

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). In addition, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *See Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008). In order to show actual injury, the defendants' conduct must have "hindered [plaintiff's] efforts to pursue a legal claim." 518 U.S. at 351.

*Bounds* did not create an abstract, free-standing right to a law library or legal assistance, and an inmate cannot establish actual injury by establishing either that the law library or that his legal assistance program was "subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. at 351. The Second Circuit has held that law libraries and "adequate assistance from persons trained in the law" are alternative methods of

12

assuring access to courts. *Bourdon v. Loughren*, 386 F.3d 88, 97 (2d Cir. 2004) (citing *Bounds*, 430 U.S. at 828). Appointment of counsel is a valid means of satisfying a prisoner's right to access to courts. *Id.* at 93 (citing inter alia *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)).

B.  **Application**

Plaintiff in this case has had appointed counsel during each of the hearings in which he was allegedly denied due process. Plaintiff's "access to courts" was through the attorneys who were appointed to represent him.[9] In fact, when plaintiff expressed his displeasure with MHLS, plaintiff acknowledges that both Judge Fahey and the Appellate Division appointed him counsel from the "panel of 18-b"[10] attorneys. (Compl. at 9). A fair and liberal reading of plaintiff's complaint shows that his problem with counsel was that they would not file a motion for his ***release***. As stated in the part of my prior recommendation, which was approved by Judge Sharpe, based upon both state and federal case law, plaintiff was ***not entitled to release***. The fact that his attorneys refused to make unnecessary or inappropriate motions is not a denial of access to courts.[11] Plaintiff's statement that he was at a "huge disadvantage" because he

---

[9] To the extent that plaintiff was involved in *Bailey*, the plaintiffs had counsel representing them.

[10] "18-b" refers to N.Y. County Law Art.18-B, which provides counsel for certain individuals who are financially unable to obtain counsel. N.Y. County Law § 722.

[11] The court notes that in attempting to interpret plaintiff's claim, it is unclear when plaintiff alleges he was denied "access" since he has generally succeeded in his recent claims (other than when he has asked for relief to which he is not entitled). Any claim accruing prior to November 27, 2010 three years prior to plaintiff signing the complaint would likely be barred by the three year statute of limitations. *Owens v. Okure*, 488 U.S. 235, 250 51 (1989). *See* N.Y. Civ. Prac. L & R. § 214(5). The court need not engage in a statute of limitations analysis because plaintiff's claims fail on the merits

13

did not have access to a law library does not state a claim, given that he was represented at all times involved in this case, notwithstanding his attorney's refusal to make a motion that was not justified by the case law. Thus, plaintiff's remaining claim may be dismissed as against all defendants.

## VI. <u>Opportunity to Amend</u>

### A. Legal Standard

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.")

### B. Application

In this case, the court finds that any attempt by plaintiff to amend his complaint would be futile. As stated above, plaintiff was represented at every hearing that he challenges in his complaint. The state court even appointed new counsel at plaintiff's request on at least two occasions. The fact that plaintiff was unhappy with counsel or that counsel would not make futile motions that plaintiff requested is not a basis for

---

whether they are barred by the statute of limitations or whether the complaint may be "liberally" interpreted to raise an access to courts claim that is more recent that 2010.

plaintiff to allege denial of access to courts. Thus, this court will recommend a dismissal with prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 53) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 9, 2016

_____
Hon. Andrew T. Baxter
U.S. Magistrate Judge